# EXHIBIT A

ELECTRONICALLY FILED
11/12/2010 5:57 PM
CV-2010-902587.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

Somvang Pakhamma,

    Plaintiff,

v.

BP America Production Company, Inc.
d/b/a BP America Production Company,

    Defendant.

CIVIL ACTION NO.
CV-2010-___*902587*

### BREACH OF CONTRACT COMPLAINT

1.    Plaintiff, Somvang Pakhamma, is an adult resident of Mobile County, Alabama.

2.    Defendant BP America Production Company, Inc. (hereinafter "BP") is a foreign corporation with its principal place of business in Tulsa, Oklahoma, and doing business in the State of Alabama.

3.    On or about May 17, 2010, Plaintiff and BP entered into a contract entitled "Master Vessel Charter Agreement" (herein the "Charter Party"), by the terms of which Plaintiff agreed to let and BP agreed to hire the vessel AL-1251-RA (herein the "Vessel"), owned by Plaintiff, at a daily charter hire rate of $1,200.00 per day. A copy of the Charter Party is attached hereto as **Exhibit A.**

4.    The Charter Party executed by the parties related to BP's "Vessel of Opportunity" (herein "VOO") program and the Vessel was chartered and utilized in connection with BP's VOO program.

5.    The Vessel was duly tendered to BP as provided in the Charter Party and daily charter hire was paid by BP to the Plaintiff from time to time as provided in the Charter Party.

6.      Under Article 2.A. of the Charter Party, the Vessel was: (a) to be "employed exclusively" for BP's use as a vessel of opportunity in the carriage of personnel, equipment and provisions and in the performance of various tasks associated with oil spill response and containment efforts as directed by BP; (b) to be available and at BP's disposal "for operation twenty-four (24) hours per day"; and (c) not to be used for any purpose other than performance of Services during the Charter Term.

7.      The Charter Party further provides in Article 1.A. that BP has the right to terminate the Charter Party at any time "as set out in Paragraph B of this Article 1." Paragraph B of Article 1 states that the Vessel shall be redelivered by Plaintiff at the close of the charter term to the original point of delivery "as determined by off-hire dispatch notification."

8.      By letter dated August 27, 2010, entitled "Notice of Non-renewal of Master Vessel Charter," BP advised Plaintiff as follows:  "Please be advised that pursuant to the terms of the Master Vessel Charter Agreement ("MVCA"), BP is providing this 'Off Hire Dispatch Notification' which terminates the MVCA immediately as of the date noted below."  The date "noted below" is August 27, 2010.  A copy of the Off Hire Dispatch Notification is attached as **Exhibit B**.

9.      Defendant BP has failed and/or refused to pay Plaintiff pursuant to the contract for charter of Plaintiff's vessel.

10.     Plaintiff has suffered specific contractual damages as the proximate consequence of the breach of the various contractual obligations owed to the Plaintiff.     Plaintiff's damages total $44,400.00 as a result of Defendant's breach of contract.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory

damages in the amount of **$4,400.00**, plus interest and costs.

Respectfully Submitted,

/s/ Steven A. Martino
RICHARD H. TAYLOR (TAY024)
STEVEN A. MARTINO (MAR057)
W. LLOYD COPELAND (COP006)
EDWARD P. ROWAN (ROW014)
Taylor • Martino, PC
51 St. Joseph Street
Mobile, AL 36602
PH: 251-433-3131
FX: 251-405-5080
richard@taylormartino.com
stevemartino@taylormartino.com
lloyd@taylormartino.com
ed@taylormartino.com

/s/ J.W. Goodloe, Jr.
J. W. GOODLOE, JR. (GOO012)
Vickers, Riis, Murray and Curran, L.L.C.
56 St. Joseph Street
11th Floor, Regions Bank Building
Post Office Drawer 2568
Mobile, AL 36652-2568
PH: 251-432-9772
FX: 251-432-9781
bgoodloe@vickersriis.com

**SERVE DEFENDANTS VIA CERTIFIED MAIL:**

BP America Production Company, Inc.
c/o Registered Agent:  C T Corporation
2 North Jackson Street, Ste 605
Montgomery, AL 36104

BP America, Inc.
CT Corporation System
2 North Jackson Street
Suite 605
Montgomery, AL 36104

0444
AL

ELECTRONICALLY FILED
11/12/2010 5:57 PM
CV-2010-902587.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

Contract No: MOB 5 7 9 7 6

AL 125-R
5770L

## MASTER VESSEL CHARTER AGREEMENT

This Master Vessel Charter Agreement (hereinafter referred to as CHARTER) is made effective as of 17 MAY 2010, 2010 by and between BP America Production Company (hereinafter referred to as CHARTERER), and ___SON VO___ hereafter referred to as VESSEL OWNER).

### ARTICLE 1.    TERM OF CHARTER

A. Subject to the availability (as mutually agreed upon between CHARTERER and VESSEL OWNER) of the vessel described in Exhibit "A" (hereinafter referred to as VESSEL), VESSEL OWNER agrees to let and CHARTERER agrees to hire the VESSEL from time to time as may be requested by CHARTERER. VESSEL OWNER shall deliver or otherwise make available the VESSEL to CHARTERER and place the VESSEL at CHARTERER'S disposal at a mutually agreed location. The term of the CHARTER shall commence on the date of the departure of the Vessel from the mutually agreed location of delivery into the service of Charterer, and shall be referred to as the "CHARTER TERM." CHARTERER may terminate the CHARTER at any time and the CHARTER TERM will terminate as set out in Paragraph B of this Article 1.

B. The VESSEL shall be delivered at the commencement of the CHARTER TERM, fully tanked with fuel, hydraulic fluid, lubricated, manned, provisioned and ready in all respects to perform SERVICES as required by this CHARTER. The VESSEL shall be redelivered to VESSEL OWNER at the close of each CHARTER TERM to the original point of delivery by CHARTERER, as determined by off-hire dispatch notification, unless VESSEL OWNER elects not to return directly to the point of dispatch, in which case, the CHARTER TERM shall cease immediately upon such election.

### ARTICLE 2.    EMPLOYMENT AND SERVICES OF VESSEL

A. During each CHARTER TERM, the VESSEL shall be employed exclusively for CHARTERER'S use as a vessel of opportunity in the carriage of CHARTERER'S employees, contractors, business invitees, equipment and provisions and in the performance of various tasks associated with oil spill response and containment efforts as directed by CHARTERER (hereinafter referred to as SERVICES). Such SERVICES shall include, but not be limited to, tending or deploying boom and skimming equipment, skimming operations, recovering oiled debris, collecting garbage, assistance with wildlife operations and towing equipment. The VESSEL shall be required to attend training, participate in training exercises and drill to receive the necessary oil spill clean up credentials as appropriate to develop skills and procedures for oil spill response and containment. The VESSEL shall be available and at CHARTERER's disposal for operation twenty-four (24) hours per day. The VESSEL shall not be used for any purpose other than performance of SERVICES during the CHARTER TERM.

B. The whole reach of the VESSEL's deck and accommodation spaces shall be at CHARTERER's disposal, reserving only proper and sufficient space for VESSEL OWNER's crew.

### ARTICLE 3.    PERFORMANCE OF VOYAGES

During the employment under this CHARTER, the VESSEL OWNER or its designated master shall perform all voyages without delay. VESSEL OWNER or its designated master shall load, stow, and trim the VESSEL. The decision to proceed on a trip in the face of adverse or changing weather or sea conditions shall be the sole decision of the VESSEL OWNER or the designated master.

### ARTICLE 4.    OPERATION IN COMPLIANCE WITH LAW

A. VESSEL OWNER warrants (i) that it has the right to CHARTER the VESSEL to CHARTERER, (ii) that the VESSEL is entitled to perform the SERVICES under all applicable law (including having all endorsements on its documentation that may be required to perform the SERVICES in accordance with applicable law)

050610

1

Contract No:  MOB 5 __ __ __ __

and (iii) that the same is free of all encumbrances which might disturb CHARTERER'S full right to SERVICES described in this CHARTER. The VESSEL OWNER shall exercise due diligence to deliver and maintain the VESSEL in a seaworthy condition. The VESSEL must display a current United States Coast Guard Safety Examination decal, unless otherwise approved by the CHARTERER. The VESSEL shall be operated, manned and maintained by VESSEL OWNER at all times during the term of this CHARTER in accordance with all applicable state and federal laws, rules and regulations, including (but not limited to) life saving requirements. The VESSEL OWNER warrants to exercise good faith in the performance of each and every obligation under this CHARTER.

B. VESSEL OWNER shall be responsible for paying any civil, criminal, or administrative fines, citations, or penalties that VESSEL OWNER may incur as a result of VESSEL OWNER'S violation of any laws, rules, or regulations during the term of this CHARTER.

C. VESSEL OWNER shall indemnify and hold CHARTERER harmless from any liability for personal injury, death, or property damage attributable to VESSEL OWNER'S intentional misconduct constituting a violation of state or federal criminal law.

## ARTICLE 5.   DESCRIPTION OF VESSEL

The VESSEL and its capabilities and capacities are described in Exhibit "A". VESSEL OWNER warrants, in good faith, the accuracy of all information set forth in Exhibit "A" and that the VESSEL has the capabilities and capacities as set forth in Exhibit "A" and that it shall be seaworthy (Fit for Purpose) at the time of delivery to CHARTERER.

## ARTICLE 6.   MANNING REQUIREMENTS

A. VESSEL OWNER shall at all times man the VESSEL with a sufficient number of competent and properly licensed crew and/or deckhands trained and experienced in the operation of the VESSEL in the waters in which the VESSEL is to operate under this CHARTER. The specific number of crew shall be two (2) crew members (captain and one crew) for vessels under 41 feet in length, and three (3) crew members (captain and 2 crew) for vessels 41 feet or greater in length, unless otherwise approved by CHARTERER. VESSEL OWNER shall cause the crew of the VESSEL to carry out their duties with due care and workmanship and the utmost dispatch and diligence. VESSEL OWNER shall be responsible for properly receiving and stowing all cargo, including maintenance of the proper trim and draft of the VESSEL. Cargo loading and unloading operations shall be under the supervision and control of VESSEL OWNER. VESSEL OWNER and crew shall operate the VESSEL in such a way as to not cause unreasonable risk or avoidable damage to any personnel or cargo. Through notification to the Fishing Vessel Administrator and upon advance approval by CHARTERER, VESSEL OWNER may provide additional crew members.

B. VESSEL OWNER warrants that the crew to be provided by VESSEL OWNER shall meet legal manning requirements in accordance with all applicable law for uses and purposes of the VESSEL required hereunder and as more particularly stated in ARTICLE 2 - EMPLOYMENT AND SERVICES OF VESSEL. The VESSEL'S crew shall be VESSEL OWNER'S employees at all times. VESSEL OWNER shall pay all wages, fringe benefits, applicable taxes, expenses, applicable fees/taxes, and transportation costs required for the VESSEL'S crew.

## ARTICLE 7.   RADIO COMMUNICATIONS

VESSEL OWNER shall have, as a minimum, the following radio equipment in a functional and working condition at all times on VESSEL: one (1) VHF marine radio, and may maintain one (1) HF SSB marine radio.  Except when outside of communication range, VESSEL OWNER may be required to maintain constant communications on an hourly basis with the assigned Group Supervisor (GS) and/or CHARTERER designated dispatcher by monitoring the VHF marine radio and providing VESSEL'S position as directed by FCP and/or dispatcher. If VESSEL OWNER fails to comply with the provisions of this Article, CHARTERER may terminate this CHARTER upon twenty-four (24) hours written notice.

2

Contract No: MOB 5 __ __ __ __

### ARTICLE 8.   VESSEL PROVISIONS

VESSEL OWNER shall provide and pay for any other supplies necessary for the VESSEL'S mechanical functioning, except as provided in Exhibit "B". VESSEL OWNER shall provide and pay for all expenses necessary for the maintenance of the crew, including, but not limited to, provisions (except as otherwise provided by CHARTERER as described in this ARTICLE), commissary, water, laundry and any necessary lodging. At the start of any CHARTER TERM, VESSEL OWNER shall provide a minimum of three (3) days of such provisions required for the maintenance of the crew. After three (3) days, during an actual oil spill, CHARTERER shall provision the VESSEL for the remainder of each CHARTER TERM. The fixed rate per day set forth in Exhibit "B" shall be increased (as stated in Exhibit "B") per day per the most recent published rate schedule for every meal provided to a CHARTERER employee or business invitee while aboard the VESSEL.

### ARTICLE 9.   MAINTENANCE OF VESSEL

VESSEL OWNER shall maintain the VESSEL'S hull and machinery in a seaworthy condition (Surveyor designation of "Fit for Purpose"). CHARTERER shall provide or otherwise reimburse VESSEL OWNER'S actual cost of hull and gear cleaning and decontamination if VESSEL requires such cleaning as a direct result of SERVICES under this CHARTER,

### ARTICLE 10.   HIRE

A.  CHARTERER will pay VESSEL OWNER for each CHARTER TERM or SERVICES satisfactorily performed and accepted by the CHARTERER in accordance with Exhibit "B". Any amendment or modification of this CHARTER must be in writing and duly executed by both parties in order to be binding. Provided, however, that CHARTERER shall be entitled at any time during the term of this CHARTER to revise Exhibit "B", by submitting or making available for viewing to VESSEL OWNER, a new Exhibit "B".

B.  CHARTERER shall pay Hire for the VESSEL and the SERVICES to be provided by the VESSEL OWNER, for each CHARTER TERM in accordance with the following provisions. For the purposes of ARTICLE 10 - HIRE, a day shall be deemed to be any portion of a twenty-four (24) hour period beginning at 12:00 midnight and ending at 11:59 pm. For the purposes of vessel length, all vessels will be rated on the generally accepted term of L.O.A., (Length Over All).

1.  For a CHARTER TERM during an actual oil spill, the rate is (as stated in Exhibit "A") a day rate.

2.  For a CHARTER TERM during an oil spill drill including but not limited to the requirement for deployment of boom the rate is (as stated in Exhibit "A") a day rate.

3.  For any CHARTER TERM described in ARTICLE 10, Paragraph A, in the event VESSEL OWNER may be requested to provide a skiff in addition to the VESSEL when approved in advance by CHARTERER'S through notification to the FVA. For the purpose of payment, the skiff length shall be based on the L.O.A. of the skiff provided.

5.  Training may consist of any of the following:

a.  Classroom training will be defined and approved in advance by the CHARTERER. A fixed rate per crew member in attendance, per day, will be paid to the VESSEL OWNER . During periods such as classroom training; Workers Compensation Insurance will be provided. The VESSEL shall not be considered under HIRE for insurance purposes; therefore insurance shall not be provided during these times.

6.  Compensation for CHARTERER requested additional crew members will be paid to the VESSEL OWNER.

7.  CHARTERER may request that the VESSEL OWNER perform SERVICES within the capabilities of

3

Contract No: MOB 5 __ __ __ __

the VESSEL not identified above. SERVICES are to be performed by VESSEL OWNER only upon a receipt of a written WORK ORDER signed by the CHARTERER, except that a verbal order will suffice in an emergency; such verbal order to be confirmed by written WORK ORDER after issuance of the verbal order. Compensation will be negotiated for each specific WORK ORDER. No payment will be made for SERVICES or items not authorized by a written WORK ORDER.

D. Only with CHARTERER'S prior written approval, CHARTERER shall reimburse VESSEL OWNER'S reasonable costs incurred and paid for by VESSEL OWNER and designated crew for travel, meals and lodging when attending CHARTERER provided or approved training or meetings unless otherwise provided by CHARTERER. Reimbursable costs will be stated in Exhibit "B".

E. The termination of the CHARTER TERM (termination of dispatch) is determined by the time the VESSEL is secure in its moorings at the original point of delivery during drills and exercises, and secure at its mooring after final decontamination after an oil spill response (which process shall be promptly undertaken without delay). If termination is by VESSEL OWNER, termination of dispatch shall be as mutually agreed by CHARTERER'S Group Supervisor and VESSEL OWNER. VESSEL OWNER must ensure FVA is notified of release time.

F. VESSEL OWNER shall be compensated at the end of the CHARTER TERM, and if the CHARTER TERM is longer than fourteen (14) days then invoices may be submitted every fourteen (14) days. The VESSEL OWNER shall provide all necessary information to the appropriate Fishing Vessel Administrator, who shall in turn submit an invoice to CHARTERER. Payment of all sums due shall be made within fifteen (15) days of receipt of an invoice by CHARTERER.

## ARTICLE 11. PORT FEES, MOORAGE, TAXES

A. CHARTERER shall pay for all port fees and moorage that may be incurred as a direct result of this CHARTER while the VESSEL is away from its home port. VESSEL OWNER shall pay all taxes incidental to use of the VESSEL.

B. The VESSEL shall be loaded and unloaded at any dock, berth, or place that CHARTERER may direct, as approved by VESSEL OWNER, which approval shall not be unreasonably withheld. VESSEL OWNER shall assist CHARTERER in locating and selecting the docks and landings suitable to accomplish the safe loading and unloading of passengers and cargo.

## ARTICLE 12. BREAKDOWN; DEFICIENCY OF CREWING OR STORES

A. In the event of any loss of time, not due to fault of CHARTERER, on account of: dry-docking or other necessary measures to maintain the efficiency of the VESSEL; deficiency of crewing or stores; breakdown of machinery, gear or equipment, damage to hull; collision; breach of orders; neglect of duty of master, officer or crew; strike or other labor stoppages of master, officers or crew; refusal to sail; stranding; fire; difficulties to the VESSEL'S flag, ownership or previous ports of call; requisition of title or use of the VESSEL; failure to comply with rules, regulations or laws of ports of call; interference by authorities; detention of VESSEL or master or officers; or any other similar accident or event whatsoever either hindering or preventing the full working of the VESSEL, then no HIRE is to be paid for any time loss until the VESSEL is again in sufficient state to fully resume SERVICES and, has regained a position equivalent to the position occupied at the time just prior to the accident or occurrence.

B. In the case of the VESSEL taken off-HIRE while on a voyage by reason of an accident or occurrence described in 12A above, the hire shall be suspended from the time of the accident or occurrence until the VESSEL is again in the same position as before the accident or occurrence and the VESSEL returns to an equivalent position or a substitute voyage directed by CHARTERER.

C. During the period of off-HIRE all reimbursable items identified in ARTICLE 10 - HIRE and ARTICLE 11 - PORT FEES, MOORAGE, TAXES that would otherwise be for CHARTERER'S account under this CHARTER shall be for the VESSEL OWNER'S account.

D. It is understood that the VESSEL shall use due diligence to comply with all applicable federal, state and

4

Contract No:  MOB 5 __ __ __ __

local environmental protection and safety laws, regulations, and stipulations when performing SERVICES in effect at all ports within the trading limits. If the VESSEL is found not to comply with any such rule, regulation or law, VESSEL OWNER shall take immediate measures to comply, and all expenses incurred as a result of such failure to comply shall be for VESSEL OWNER'S account under the off-HIRE provisions of ARTICLE 12.

E.  If the VESSEL is lost or becomes a constructive total loss, HIRE shall cease at 11:59 PM of the day of VESSEL loss or constructive total loss. If the VESSEL is missing, HIRE shall be suspended as of 11:59 PM on the day when the VESSEL was last heard from and until the VESSEL'S safety has been established, unless loss of contact is deemed to have occurred through no fault of VESSEL OWNER.

F.  Any HIRE paid for in advance is to be adjusted by refund or deduction from future payments for any off-HIRE or suspension during the period for which payment was made.

G.  If the VESSEL is off-HIRE for a period of time exceeding twenty-four (24) hours for any of the events referred to in ARTICLE 12, CHARTERER may terminate this CHARTER at its sole option if VESSEL OWNER is not making best efforts to return to a safe harbor.

## ARTICLE 13.   INSURANCE

A.  VESSEL OWNER confirms that it will maintain in place any insurance policies it is carrying as of the date immediately prior to entering into this CHARTER or that it routinely carries for its usual operations

B.  The insurance coverage referred to in Paragraph A above shall remain in effect during the CHARTER TERM, when the VESSEL is on HIRE for training as directed by CHARTERER, or the VESSEL is on HIRE for oil spill response. The time of coverage shall be from dispatch until termination of dispatch by either the VESSEL OWNER or CHARTERER.

C.  Insurance coverage may be activated for VESSELS that choose to travel to a remote site the day prior to an exercise or drill with prior approval by the CHARTERER. The VESSEL will only be considered on-HIRE for the purpose of insurance and will not receive any compensation.

D.  In the event of any happening that may result in a claim against the coverage afforded in Paragraph A, prompt notice thereof shall be given to the party first aware of such claim in order to afford both parties an immediate opportunity to investigate the facts and circumstances giving rise to the potential claim.

E.  The parties understand and agree that the insurance coverage summarized in Paragraph A is more particularly described in the insurance policies, the terms, conditions and exclusions of which shall control..

Note: Copies of the insurance policies summarized in Paragraph A are available upon request.

F.  VESSEL OWNER warrants that during the term of this CHARTER that as to the insurance described in Paragraph A of this Clause 13, it shall:

  1.  Pay all premiums to keep such insurance policies in full force and effect on the terms and conditions more particularly described in such policies.

  2.  Will not modify, amend or otherwise agree to any reduction in coverage afforded under the policies.

G.  If VESSEL OWNER has a claim against CHARTERER or has Notice of any claim(s) for which CHARTERER is or could be accountable;

  1.  VESSEL OWNER will exercise good faith and prudent management of all claims, including third party claims, and will not defend or settle third-party claims without CHARTERER'S knowledge and prior written consent.

H.  In the event VESSEL OWNER's cost for insurance as provided for hereunder is, by virtue of the

5

Contract No: MOB 5 __ __ __ __

SERVICES being provided hereunder, in excess of that normally paid by VESSEL OWNER for its standard coverage, then CHARTERER agrees to pay the cost over and above that normally incurred by VESSEL OWNER for its standard coverage. VESSEL OWNER shall advise CHARTERER of such excess cost before incurring same and shall document the amount of such cost it is claiming for. Nothing herein shall prevent CHARTERER from taking out insurance for any risks it may deem appropriate but nothing herein shall require CHARTERER to do so.

## ARTICLE 14.   SALVAGE

All derelicts and salvage shall be for VESSEL OWNER'S and CHARTERER'S equal benefit, after deducting VESSEL OWNER'S and CHARTERER'S expenses and crew portion.

## ARTICLE 15.   CHARTER NOT A DEMISE

Nothing stated in this CHARTER is to be construed as demise of the VESSEL to CHARTERER. VESSEL OWNER shall at all times remain responsible for the navigation of the VESSEL, acts of pilots, tug vessels, crew, and all other similar matters as if trading for its own account.

## ARTICLE 16.   CHARTERER'S USE OF VESSEL

During the CHARTER TERM the VESSEL OWNER shall not make any other use of the VESSEL without CHARTERER's prior authorization. In addition, the VESSEL OWNER shall not allow on board the VESSEL any non-crew member who would interfere with the VESSEL OWNER'S performance of SERVICES under this CHARTER. If the VESSEL OWNER allows on board the VESSEL any persons who are not crew members, or CHARTERER employees, or business invitees, the VESSEL OWNER shall be solely responsible for any liability for any injury to or death to any such person attributable to that person's presence on board the VESSEL. In no event shall CHARTERER be liable for any expenses resulting from the injury to or death of any such person allowed on board without CHARTERER'S prior authorization.

## ARTICLE 17.   VESSEL OWNER IS INDEPENDENT

A.  VESSEL OWNER and its employees and any approved Subcontractors and their employees are independent contractors and are not employees, partners, or joint ventures with CHARTERER. VESSEL OWNER and Subcontractors and their respective employees will not represent CHARTERER in performance of SERVICES under this CHARTER, or engage in any conduct that would imply that VESSEL OWNER and Subcontractors and their respective employees are other than independent contractors.

B.  VESSEL OWNER is responsible for the manner, means and methods of performing SERVICES under this CHARTER.

C.  VESSEL OWNER shall pay all federal and state taxes, contributions and/or assessments associated with the performance of SERVICES, including, but not limited to, income taxes and self-employment taxes, and shall be responsible for providing its own employee benefit plans.

D.  VESSEL OWNER acknowledges and understands that as an independent contractor, VESSEL OWNER and its employees and Subcontractors and their employees are not eligible for any employee benefits under any plans maintained by CHARTERER, including, but not limited to, the CHARTERER Savings and Investment Plan, Pension Plan, Sick Pay Plan, Long Term Disability Insurance Plan, Voluntary Personal Accident Insurance Plan, Severance Plan, Group Life Insurance Plan, Dental Plan, Occupational Death Plan, Business Travel Plan and Medical Plan.

E.  VESSEL OWNER will indemnify, defend and hold CHARTERER and its respective employees and agents harmless from and against any and all claims, demands, actions, losses, expenses and/or liabilities resulting from or related to:

6

Contract No: MOB 5 __ __ __ __

1. Any claim, demand, and/or determination that VESSEL OWNER, its employees and/or Subcontractors and their employees are not independent contractors in connection with the performance of SERVICES under this CHARTER, including, but not limited to, any claims or liabilities for regular or overtime wages, salaries, taxes, contributions, and/or assessments; and/or

2. Any claim, demand, and/or determination that VESSEL OWNER, its employees and/or Subcontractors and their employees are entitled to benefits in connection with the performance of SERVICES under this CHARTER under any employee benefit plans maintained by CHARTERER; and/or

3. Any claim, demand, and/or determination that VESSEL OWNER'S employees or Subcontractors' employees are entitled to additional compensation or benefits as a result of VESSEL OWNER'S employment policies and practices; and/or

4. Any claim, demand, and/or determination that VESSEL OWNER'S employees or Subcontractors' employees are entitled to additional compensation or benefits, of whatever kind or character, or damages, of whatever kind or character, based on whole or in part upon theories that they are direct, dual, loaned, borrowed, and/or co-employees of CHARTERER, in addition to being employees of VESSEL OWNER or Subcontractor.

F. Should VESSEL OWNER or Subcontractor assume the defense of CHARTERER pursuant to Paragraph E, CHARTERER shall also be entitled to separate defense and representation of its interests through counsel acceptable to CHARTERER.

## ARTICLE 18.   NOTICES

All notices and communications from VESSEL OWNER to CHARTERER and from CHARTERER to VESSEL OWNER shall be addressed as follows:

CHARTERER
BP America Production Company

501 Westlake Park Blvd

Houston, TX 77079
Attn: Tamara Garrett, Contract Manager
Telephone:

CONTRACTOR

_____ SON    V D _____ [[Contractor.Co Name]]

__ 8730 W   ALBA St __ [[Contractor Address]]

__ BAYOU LA BATRE, AL 36509 __ [[City/State/ZIP]]

Attn: _____

Telephone: (251) 490 - 6810

Facsimile: _____

Email: _____

7

K

Contract No: MOB 5 __ __ __ __

### ARTICLE 19. CHOICE OF LAW AND FORUM

The rights and obligations of the Parties to this CHARTER including all matters of construction, validity and performance, shall in all respects be governed and enforced in accordance with the general maritime laws of the United States. In the event, but only in the event, the maritime laws of the United States do not apply, the laws of the State of Louisiana shall govern. Any litigation arising out of or relating to the CHARTER may be brought in a court of competent jurisdiction in New Orleans, Louisiana or Houston, Texas.

### ARTICLE 20. AUDIT AND TERMINATION

At any time during the term of this CHARTER, CHARTERER shall have the right to audit logs, books, payrolls, and records relating to any of the services performed hereunder. In addition to any other right of termination herein, VESSEL OWNER may terminate this CHARTER or any company listed in Exhibit "A" at any time for any reason whatsoever by giving the said party twenty-four (24) hours advance written notice of such termination, and any company listed in Exhibit "A" may terminate its obligations upon (24) hours advance written notice to CHARTERER.

### ARTICLE 21. ASSIGNMENT/SUBCONTRACTING

A. VESSEL OWNER will not assign any of its rights or delegate any of its obligations under this CHARTER without prior written approval from CHARTERER. CHARTERER'S approval of any assignment, subcontract or delegation will not relieve VESSEL OWNER of any responsibility under this CHARTER.

B. VESSEL OWNER shall not assign any rights or delegate any obligations hereunder without CHARTERER'S prior written approval, which shall not be unreasonably withheld. Any such unauthorized assignment shall be void. CHARTERER may assign this CHARTER to third parties specifically including any of its respective affiliates or a response action contractor..

### ARTICLE 22. WAIVER

If CHARTERER fails to enforce any right or remedy available under this CHARTER, that failure will not be construed as a waiver of any right or remedy. A waiver of any claim, demand, right or remedy based on the breach of any provision of this CHARTER will not be construed as a waiver of any other claim, demand, right or remedy based on a subsequent breach of the same or any other provision.

### ARTICLE 23. SEVERABILITY

If any part, term or provision of this CHARTER is determined by a court of competent jurisdiction to be unlawful or unenforceable, the validity and enforceability of the remaining parts, terms and provisions will not be affected.

### ARTICLE 24. ENTIRE AGREEMENT; SUCCESSORS

A. This CHARTER includes any and all Exhibits referenced in this CHARTER and constitutes the entire agreement between the Parties with respect to this CHARTER. This CHARTER cancels and supersedes all prior negotiations, representations or agreements, both written and oral, including any proposals submitted by VESSEL OWNER. The Parties have not been induced by any representation, statements or agreements other than those expressed in this CHARTER. No changes, alterations, or modifications to this CHARTER will be effective unless made in writing and signed by both Parties.

B. This CHARTER will benefit and bind the successors, representatives and assignees of both Parties.

Contract No: MOB 5 __ __ __ __

## ARTICLE 25.   PRIORITY OF TERMS

In the event of any conflict or inconsistency between the various parts of this CHARTER, the Articles will take precedence over all other parts of this CHARTER, including any Exhibits, Attachments and Addenda, unless specifically stated otherwise.

THE PARTIES HAVE EXECUTED THIS CHARTER by their respective authorized representatives, as of the date first written above.

CONTRACTOR:

CHARTERER:
**BP America Production Company**

By: _Son Vuong_     17-MAY 2010     By: _____ 5/17/2010
(Signature)       (Date)       (Signature)       (Date)

_SON   VO_       _Joseph Sso_
(Print or Type Name)       (Print or Type Name)

_OWNER_       _Vdo Coordinator_
(Print or Type Title)       (Print or Type Title)

9

X

## Exhibit A

Attached to and made part of the Master Vessel Charter Agreement
dated ___5/17/10___, 2010 between Charterer and Vessel Owners

### COMPENSATION PROVISIONS/PUBLISHED RATE SCHEDULE

### PARAGRAPH 1 - COMPENSATION

As full and complete compensation to VESSEL OWNER for SERVICES satisfactorily performed and for assuming obligations hereunder, CHARTERER, for and on behalf of OWNERS, will pay VESSEL OWNER on the basis of the fixed rates (FIXED RATES), set forth below in PARAGRAPH 2 - FIXED RATES, and will reimburse VESSEL OWNER for the costs of specific items set forth below in PARAGRAPH 3 - REIMBURSABLE COSTS. CHARTERER shall be entitled at any time during the term of this CHARTER to revise EXHIBIT A – COMPENSATION PROVISIONS/PUBLISHED RATE SCHEDULE, by submitting or making available for viewing to VESSEL OWNER, a new EXHIBIT A – COMPENSATION PROVISIONS/PUBLISHED RATE SCHEDULE.

### PARAGRAPH 2 - FIXED RATES

VESSEL OWNER's FIXED RATES (hereinafter FIXED RATES) are agreed to be VESSEL OWNER's sole, complete, and exclusive compensation for performing and completing SERVICES under CHARTER, except as noted in PARAGRAPH 3 - REIMBURSABLE COSTS below, including, without limitation, all management, labor, supervision, salaries, wages, taxes of all kinds, insurance premiums, contributions, equipment, equipment maintenance, materials (not provided by CHARTERER), support facilities, transportation (if not provided by CHARTERER), tools, overhead and profit. FIXED RATES are not subject to renegotiation or retroactive adjustments based on actual experience and are not subject to escalation.

### FIXED RATES FOR SERVICES:

| SERVICES | FIXED RATES |
|---|---|

A. Vessel Services:

 1. Actual Spill Response:
    As defined in ARTICLE 10 - HIRE, Paragraph B1

| | |
|---|---|
| Vessels > 65' | $3000/24 hour day |
| Vessels > 45' – 65' | $2000/24 hour day |
| Vessels >30' - 45' | $1500/24 hour day |
| Vessels less than 30' | $1200/24 hour day |

  Plus:
  Specialized equipment required by BP reimbursable at cost +10%
  PPEs will be provided by CHARTERER

B. Crew Services:

 1. Actual Spill Response, Classroom Training, Table Top Activities, or Meetings:
    As defined in ARTICLE 10 – HIRE, Paragraph B5          $200.00/8 hour day/
                                                           crewmember

 2. Meals for provided by Vessel Owner

**EXHIBIT B**

**VESSEL INFORMATION**

A. **General Information**

Vessel Name: _____

Home Port : __BAYOU LA BATRE__

Vessel Location __BAYOU LA BATRE__

Call Sign: _____

X USCG Safety Decal No.: __B - 5__

X USCG Safety Decal Expiration Date: __5 - 17 - 2011__

State Registration No.: __AL 1251 RA__

X Vessel Type (Shrimper etc): __CRAT   Oyster & Crab__

Vessel Construction (wood, steel etc) __FiBiRGLASS__

Vessel Length: __27 F__

Bunk Capacity: __2__

Crew Number Requirement: __2__

B. **VESSEL OWNER Contact Information**

Company Name: _____

Contact Name: __SON VO__

Email Address: _____

Mailing Address: __8730 W ALEA St BAYOU LABATRE AL 36509__

Physical Address: __15015 BAYOU St CODEN AL 36523__

Home Phone: _____

Cell Phone: __(251) 490-6810__

Facsimile Phone: _____

C. **Vessel Survey/Insurance Information**

Date of Survey: _____

Insured? (Yes/No) __NO__

**PARAGRAPH 3 - REIMBURSABLE COSTS**

A.  CHARTERER shall provide or otherwise compensate VESSEL OWNER at the current commercially available rate per HP/100 x 3 x Hrs. dispatched x current fuel rate for diesel, gas and auxiliary fuels (as specified in EXHIBIT B - CHARTER VESSEL INFORMATION) or fraction thereof while VESSEL is on HIRE for the cost of all the fuel, hydraulic oil and lube oil.  CHARTERER's CONTRACT REPRESENTATIVE may make adjustments to formula as warranted.

NOTE:  Current rate of all commercially available fuel as of the dispatch off-HIRE date in the VESSEL's home port.

B.  In addition to payment of FIXED RATES as set forth above, VESSEL OWNER shall be reimbursed for the following actual costs incurred and paid by VESSEL OWNER. Said costs in 1 and 2 below shall be those net costs incurred and paid by VESSEL OWNER and shall be invoiced to CHARTERER at net cost.

1.  When approved in advance by CHARTERER's CONTRACT REPRESENTATIVE reasonable and actual airline travel while on travel away from VESSEL OWNER's home port shall be tourist/economy class unless otherwise approved in writing in advance by CHARTERER's CONTRACT REPRESENTATIVE.

2.  When approved in advance by CHARTERER's CONTRACT REPRESENTATIVE, vehicle rental while on travel status away from VESSEL OWNER's home port shall be mid-size or smaller unless approved in writing in advance by CHARTERER's CONTRACT REPRESENTATIVE.

D.  **Vessel Engine Information**

X   Make: ___NATIONAL___          Pro line

X   Model: _30/56 Caterpiler_     Mercury

X   Total HP: _200_               230

Number of Engines: _1_            2

X   Drive Type: _WINDISS 2401_    2

X   Fuel Storage Amount (Gallons): _80 Gllons_   70 gallons

X   Burn Rate (GPH): _4 Gllon per Hous_   1 gallon per mile/a 1 1/2 mile

Fuel Type: ___DiESEL___           gas

Aux. Engine? (Yes/No) _____

Aux. HP: _____

Aux. Fuel Type: _____

E.  **Skiff Information**

Type: _____

Length: _____

HP: _____

Fuel Type: _____

F.  **Comments**

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

EXHIBIT C

## AGREEMENT REGARDING PROPRIETARY AND CONFIDENTIAL INFORMATION

WHEREAS, BP America Production Company (hereinafter referred to as CHARTERER) and the undersigned (hereinafter referred to as VESSEL OWNER) have entered into CONTRACT (hereinafter referred to as CHARTER) effective as of the undersigned date whereunder VESSEL OWNER, its subcontractors, and their respective employees will be performing certain services with respect to the lending or deploying boom and skimming equipment, skimming operations, recovering oiled debris, collecting garbage, assistance with wildlife operations and towing equipment operation in connection with the Deepwater Horizon Incident (hereinafter referred to as OIL SPILL RESPONSE AND CONTAINMENT) and VESSEL OWNER, its subcontractors, and their respective employees are being paid by OWNERS, either directly or indirectly, for their services thereunder; and

WHEREAS, it is the desire of CHARTERER and OWNERS to secure the benefit of, protect and maintain as confidential all technology and information developed or disclosed in connection with OIL SPILL RESPONSE AND CONTAINMENT;

NOW THEREFORE, the undersigned hereby agree that:

1.  This Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana. Any litigation arising out of or relating to the CHARTER may be brought in a court of competent jurisdiction in New Orleans, Louisiana or Houston, Texas.

2.  The obligations of the undersigned and the rights of CHARTERER and OWNERS under this Agreement are continuing obligations and rights, and the termination or expiration of CHARTER shall not terminate such obligations and rights.

3.  It will not perform services for others during the life of CHARTER which might conflict with the work to be performed in connection with the aforesaid SERVICES; otherwise, consistent with the terms hereof, the undersigned is free to perform services for others.

4.  All Data, patent applications and patents arising out of performance of SERVICES under CHARTER or relating to OIL SPILL RESPONSE AND CONTAINMENT are the property of OWNERS and the undersigned will take all necessary steps to secure OWNERS' rights and title thereto.

5.  It will promptly disclose in writing to CHARTERER all inventions, discoveries, or improvements which are conceived or made by it, solely or jointly, which arise out of or relate to the performance of SERVICES under the CHARTER or to the Data defined above. It further agrees to assign and, on request by CHARTERER or OWNERS, will assign to CHARTERER's or OWNERS' designee(s) all such inventions, discoveries, and improvements, and all applications for patent and patents which may result therefrom, and cooperate with CHARTERER or OWNERS and their designee(s) in the preparation and execution of all papers required to secure Letters Patent thereon.

6.  It will not use Data for any purpose other than as required by CHARTERER for the purpose of performing SERVICES under CHARTER without the prior written permission of CHARTERER.

The undersigned has signed this Agreement as of the date written below.

Contractor

By: _Son Truong_

(Signature)

_SON     VO_

(Print or Type Name)

_17  MAY  2010_

(Date)

_OWNER_

(Print or Type Title)

### Exhibit D – Safety Equipment Checklist

| Distance from Shore m = nautical miles from shore | less than 3m | less than 20m if only Daylight & favorable weather | less than 20m | greater than 20m and less than 60m | greater than 60m & less than 150m |
|---|---|---|---|---|---|
| Life rings | 1 | less than 15 people on board = 2; greater than 15 people on board = 4 | less than 15 people on board = 2; greater than 15 people on board = 4 | less than 15 people on board = 2; greater than 15 people on board = 4 | less than 15 people on board = 2; greater than 15 people on board = 4 |
| Life rings with lights based on above people on board | 0 | 1 or 2 | 1 or 2 | 1 or 2 | 1 or 2 |
| Floating Life ring line based on above people on board | 0 | 1 or 2 | 1 or 2 | 1 or 2 | 1 or 2 |
| Parachute flares | 0 | 2 | 4 | 4 | 6 |
| Red Hand Held flares | 3 | 2 | 2 | 6 | 6 |
| Smoke Signals | 2 floating or hand held | 2 floating or hand held | 2 floating or hand held | 2 floating or hand held | 2 floating |
| Immersion Suit | 0 | 0 | 0 | 0 | All crew |
| 406 MHz EPIRB | 0 | Yes | Yes | Yes | Yes |
| Search and Rescue Transponder | 0 | 0 | 0 | 0 | Yes |
| General Alarm | 0 | 0 | 0 | Yes | Yes |
| Life Jackets (USCG approved) | all people on board | all people on board | all people on board | all people on board | all people on board |

| less than 36ft | Red/Green running lights and an all around white light | Portable or permanent Horn | Yes, as required by USCG | Yes |
|---|---|---|---|---|
| 36 ft - 60 ft | White masthead light visible from 3 miles + red/green running lights + white stern light | Horn and Bell required | Yes, as required by USCG | Yes |
| 60 ft and larger | White masthead light visible from 5 miles + red/green running lights + white stern light | Horn and Bell required | Yes, as required by USCG | Yes |

I, the undersigned confirm my vessel meets the minimum requirements set forth above.

VESSEL NAME/S _____

Date: _17 MAY 2010_

Printed Name _SON   VO_          Signature _Saurman_

TRANSMISSION VERIFICATION REPORT

```
                                      TIME   : 10/18/2007 14:05
                                      NAME   :
                                      FAX    :
                                      TEL    :
                                      SER.# : M6J336211
```

```
    DATE,TIME                    10/18  14:05
    FAX NO./NAME                 1
    DURATION                     00:00:00
    PAGE(S)                      00
    RESULT                       BUSY
    MODE                         STANDARD
```

BUSY: BUSY/NO RESPONSE

ELECTRONICALLY FILED
11/12/2010 5:57 PM
CV-2010-902587.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK



# Notice of Non-renewal of Master Vessel Charter



**Charterer:**
**BP Exploration & Production Inc.**
501 Westlake Park Boulevard
Houston, Texas 77079

| Project: Mississippi Canyon (MC-252) |

Son Vo
8730 West Alba Street
Bayou La Batre, AL 36509

Master Vessel Charter Agreement No.: 57976
Vessel Name:
Vessel Location: Bayou La Batre

Dear Vessel Owner:

Please be advised that pursuant to the terms of the Master Vessel Charter Agreement ("MVCA"), BP is providing this "Off Hire Dispatch Notification" which terminates the MVCA immediately as of the date noted below.

If you have not had your vessel properly decontaminated and an off-hire survey performed please immediately contact your local Vessel of Opportunity coordinator to schedule your off-hire survey and decontamination as soon as possible.

Please submit your final invoices within (thirty-five) 35 days of the date on this Notice. Failure to timely submit your invoice(s) may result in delayed or non-payment.

We at BP would like to thank you for your efforts in supporting this response.

Sincerely,
**BP Exploration & Production, Inc. (Charterer):**

Charlotte Thompson

Charlotte A. Thompson

VOO Logistics Branch Director

Termination Date: August 27, 2010

Revised 4-1-99; 11-1-99; 11-3-05

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

SOMVANG  PAKHAMMA                     *

                                      *
_____
          Plaintiff,                  *

                                      *     CIVIL ACTION NO. CV 2010- 902587
vs.
                                      *
BP AMERICA  PRODUCTION
                                      *
CO  INC  ET  AL
          Defendant,                  *


## GENERAL PRE-TRIAL ORDER


To expedite pre-trial and trial procedure, it is ORDERED by the Court that the following will apply:

1.      EXHIBITS, DOCUMENTS, AND PHYSICAL EVIDENCE, GENERALLY

a.      Each party shall identify in writing to all other parties and shall make all documents, exhibits and physical evidence, or copies thereof, expected to be used in the case in chief available to the other parties, not less than 21 days prior to trial, for inspection and copying. The same shall then be authenticated and admitted into evidence without further proof, unless written objections to any such documents or exhibits be made to the Court not less than 14 days prior to trial specifying the grounds of objection to the genuineness and relevancy of the proposed document, exhibit, or physical evidence. The requirement does not apply to documents, exhibits and physical evidence used solely as impeachment evidence.

b.      Documents, exhibits or physical evidence not timely exhibited to or made available to other parties prior to trial under this Order will not be admitted into evidence at the trial unless solely for impeachment purposes or unless the ends of justice so require.

c.      Documents, exhibits or physical evidence so admitted hereunder shall be presented to the court reporter for marking in evidence prior to trial.

2.      DOCTOR, HOSPITAL AND MEDICAL EXPENSES

a.      If applicable, all doctor, medical and hospital bills shall be sent to or made available to all parties not less than 21 days before trial and shall be admitted in evidence as reasonable without further proof, unless written objection to any such bills be made to the Court no less than 14 days before trial specifying the grounds for objection.

b.      Any such bills not timely exhibited to the other parties will jot be admitted in evidence at trial unless the ends of justice so require.

c.      The bills so admitted shall be presented to the court reporter for marking in evidence prior to trial.

3.   SPECIAL DAMAGES

a.      All parties seeking special damages shall furnish the other parties with a list thereof not less than 21 days before trial. Written objections thereto may be made not less than 14 days before trial specifying grounds of objections.

b.      Evidence of special damages claimed, but not timely exhibited to other parties, will not be admitted into evidence unless the ends of justice require so.

4.   AGENCY-TIME AND PLACE-DUTY

a.      Agency and the time and place of the incident involved, if alleged in the complaint, and, if a negligence case, the existence of a duty, are admitted and the parties are deemed correctly named and designated unless specifically denied by answer or unless written objection is made not less than 14 days before trial. The objections shall include the correct name and entity and/or the grounds relied on.

5.   EXPERTS

a.      Unless previously obtained by discovery, each party will furnish to all other parties the names, addresses and qualifications of all expert witnesses expected to testify, together with a brief summary of their opinions. Such disclosure of experts shall be made by the party filing the Motion to Set and Certificate of Readiness not later than the time of filing such motion. Disclosure by all parties shall be made not later than 14 days after the filing of the Motion to Set and Certificate of Readiness.

b.      Disclosure of experts in cases not included in the Fasttrack system shall be made by all parties not less than 60 days before trial.

c.      Unless written objection to the qualifications of an expert is made not later than 30 days before trial, stating grounds, the qualification of such expert will be admitted.

d.      Upon calling an expert to testify at trial, the attorney may state to the Court and jury the name, address and summary of the qualifications of the expert.

6.   DISCOVERY

Discovery shall be completed 30 days prior to the trial date. On written motion for good cause shown, the court may allow discovery within this 30-day period.

7.   JURY INSTRUCTIONS

If the case is to be tried by a jury, requested written charges shall be submitted to the Court not later than the close of the plaintiff's case, subject to supplementation during the course of the trial on matters which could not be reasonably anticipated. Each requested charge will be typed on letter size paper and identified by the party's last name and shall be numbered.

8.   JURY SELECTION

Before the commencement of trial, the parties will furnish or advise the court, outside the presence of the jury, the names of all insurance companies involved and any special voir dire questions for the purpose of qualifying the jury.

9.   DUTY TO SUPPLEMENT DISCOVERY

All parties are under duty to supplement responses to discovery as provided by Rule 26(e)(3) ARCP which should be done not less than 30 days before trial.

10.   MOTIONS GENERALLY

If motion to strike or motion to dismiss a pleading is filed, the Court will not consider such unless a copy of the pleading sought to be struck or dismissed is attached thereto.

11.   CONFLICTS

In the event of scheduling conflict affected counsel shall comply with the Attorney Calendar Conflict Resolution Order of the Alabama Supreme Court.

It is further ORDERED by the Court that the Court will reconsider any portion of the General Pre-Trial Order upon timely application by any party.

Done this the _____ day of _____NOV 1 2 2010_____, 2010

Charles A. Graddick, Presiding Circuit Judge

THE STATE OF ALABAMA )
MOBILE COUNTY          )

## NOTICE OF DISCOVERY

SOMVANG PAKHAMMA

Vs.

CASE NO. _CV2010 - 902587_

BP AMERICA PRODUCTION CO

SERVICE BY:

___✓___ CERTIFIED MAIL
_____ SHERIFF
_____ PROCESS SERVER

TO: _BP AMERICA PRODUCTION CO INC_

PLEASE TAKE NOTE, THAT IN THE FOLLOWING STATED CAUSE PENDING IN
OUR CIRCUIT COURT OF MOBILE COUNTY _EDWARD P. ROWAN_ ESQ.
HAS FILED
     WRITTEN DISCOVERY REQUESTS

THE DEFENDANT IS REQUIRED TO RESPOND TO THE ABOVE LISTED DISCOVERY
WITHIN 45 DAYS AFTER SERVICE OF THIS NOTICE

WITNESS:  JOJO SCHWARZAUER, CLERK, THIS _12_ DAY OF _Nov. 2010_

JOJO SCHWARZAUER, CIRCUIT CLERK
MOBILE COUNTY CIVIL DIVISION
MOBILE GOVERNMENT PLAZA C-936
205 GOVERNMENT STREET
MOBILE, AL 36644-2936

ELECTRONICALLY FILED
11/12/2010 5:57 PM
CV-2010-902587.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

**IN THE CIRCUIT COURT OF MOBILE COUNTY,**

SOMVANG PAKHAMMA,

    Plaintiff,

v.

                                  CIVIL ACTION NO. CV2010- *902587*

BP America Production Company,

    Defendant.

## DISCOVERY TO ALL DEFENDANTS

### DEFINITIONS

Unless otherwise indicated, the following definitions shall be applicable to these DISCOVERY REQUESTS:

1.     "YOU" or "YOUR" shall mean the defendants whom this discovery is directed to (in the case of the corporate defendant, it shall include its subsidiary and affiliated corporations) and each of their attorneys, experts, including, without limitation, contractors, subcontractors, agents and employees of experts, employees, agents or representatives and all other persons acting on their behalf.

2.     The term "COMMUNICATION" or "COMMUNICATIONS" or "COMMUNICATE" shall mean and include any transaction or exchange of information between two or more persons, whether orally or in writing, and includes without limitation, any conversation or discussion by means of letter, telephone, note, memorandum, telegraph, telefax, telecopier, cable, computer or any other electronic or other medium, including written, audio, video, computer disk or computer tape.

3.     The term "DOCUMENT" or "DOCUMENTS" shall mean and include writings of any kind, formal or informal, whether or not wholly or partially in handwriting including by way of illustration and not by way of limitation, any invoice, receipt, endorsement, check, bankdraft, canceled

check, deposit slip, withdrawal slip, order, correspondence, record book, minutes, memorandum of telephone and other conversations, including meetings, agreements and the like, diary, calendar, desk pad, scrapbook, notebook, bulletin, circular, form pamphlet, statement, journal, postcard, letter, telegram, telex, telefax, report, notice, message, analysis, comparison, graph, chart, interoffice or intraoffice communications, photostat or other copy of any documents, microfilm or other film record, any photograph, sound recording or any type of device, computer data, any punch card, disc or disc pact, any tape or other type of memory generally associated with computers and data processing (together with the programming instructions and other written material necessary to use such punch card, disc, or disc pact, tape or other type of memory and together with printouts of such punch card, disc, or disc pact, tape or other type of memory; including (a) every copy of each document which is not any exact duplicate of a document which is produced, (b) every copy which has any writing, figure or notation, annotation or the lack of it, (c) drafts, (d) attachments to or enclosures with any document, (e) every document referred to in any other document, (f) all original file folders in which each such document is contained.

4.      The terms "PERSON" or "PERSONNEL" shall refer to a natural person, firm, association, organization, partnership, business trust, corporation, or public entity.

5.      The term "CORRESPONDENCE" shall, without limiting the generality of the definition, include any letter, note, memorandum, facsimile, electronic mail, telegram, telex, notice, report, statement, and all other types and forms of information exchange whether made by hand, computer, typewriter, printer, pen, pencil, or other form of recording.

6.      The singular number and masculine gender, as used herein, shall be deemed the plural, the feminine and the neuter, as may be appropriate.

7.    Wherever it is necessary to bring within the scope of these requests DOCUMENTS that might otherwise be construed to be outside their scope (1) use of "and" as well as "or" shall be construed both disjunctively and conjunctively; (2) the use of "include(s)" and "including" shall be construed to mean "without limitation"; and (3) the use of a verb in any tense or voice shall be construed as the use of that verb in all other tenses and voices.

8.    If any of the DOCUMENTS requested herein is withheld under a claim of privilege, identify each such DOCUMENT and state the date of the DOCUMENT, identify its author and addressee, each PERSON to whom copies of the DOCUMENT were furnished and to whom the contents thereon were COMMUNICATED, a summary of the subject matter of the DOCUMENT, its present location and custodian, the basis upon which the asserted privilege is claimed and the request to which the DOCUMENT is responsive.

9.    If any of the DOCUMENTS requested herein has been destroyed, furnish a list identifying each such DOCUMENT, its author and addressee, each PERSON to whom copies of the DOCUMENT were furnished and to whom the contents thereof were communicated, a summary of the substance of the DOCUMENT, the date upon which it was destroyed and the reason it was destroyed.

10.    As used herein, the term "COMPLAINT" shall refer to and include the complaint filed in the above-captioned matter.

11.    The term "PROBLEM" or "PROBLEMS" mean any criticism, question, complaint, question, claim, notice, complaint, issue, grievance, conclusion, belief, opinion, concern, charge or protest, whether written or oral, and whether communicated by a person not employed by Defendant; or noted, observed, or communicated by a person employed by the Defendant.

12.    The terms "IDENTIFY" OR "IDENTIFICATION", when used with referenced to a PERSON, shall mean to state the full name and the present or last known address and telephone

number of such PERSON as well as his/her place of employment and job title.

13.     The terms "IDENTIFY" or "IDENTIFICATION", when used with reference to a document which is not produced to Defendant, shall mean to state its date, author or signer, his address, type of document and all other means of identifying it, and its present or last known location or custodian; if any document was but is not longer in your possession, custody or control, state that disposition was made of it and the reason for its disposition.

14.     The term "REPORT" or "REPORTS" shall mean any CORRESPONDENCE or COMMUNICATION wherein there is contained any criticism, question, complaint, claim, notice, issue, grievance, conclusion, belief, opinion, concern, charge or protest, whether written or oral, and whether communicated by a person not employed by Defendant; or noted, observed, or communicated by a person employed by the Defendant.

15.     The term "BP", shall mean the company or companies that are affiliates of British Petroleum which are responsible for the cleanup of the Deepwater Horizon Oil Spill that hired and/or were ultimately responsible for payment of the Vessel Owners employed in the Vessel of Opportunity program.

16. The term "VOO", shall mean the Vessel of Opportunity program funded by BP for clean up efforts after the Deepwater Horizon oil spill.

17.     The term "Charter Party" means the document entitled, "Master Vessel Charter Agreement" that was signed by the Plaintiff and BP for the Vessel of Opportunity program.

18.     The term "Vessel Owner" means the party to any Charter Party or lease agreement with you ("Master Vessel Charter Agreement") which was to receive payment for operations in the VOO program, including the Plaintiff herein.

## INTERROGATORIES

COMES NOW the Plaintiff in the above-styled cause, desiring the testimony of the Defendant, propounds the following Interrogatories pursuant to A.R.C.P. 33.

*You are under a duty to seasonally amend a prior response if you obtain information upon the basis of which you know that the response, through correct when made, is no longer true, and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.*

1.      Are you correctly named in the complaint?  If your answer is "NO" then please state your correct legal name, address, and registered agent.

    **ANSWER:**

2.      State the name, address, registered agent, and principal place of business of all entities that were responsible for payment pursuant to the Charter Party at issue in this case.

    **ANSWER:**

3.      State the name, address and telephone number of all persons and all entities employed by you (and any of your sub-contractors) in the VOO program.

    **ANSWER:**

4.      Did BP ever pay any Vessel Owners in the VOO program for time when their vessel was idle at a dock and not working?  If BP did pay when vessels were not working on the water, then please state:

    (a)      the name, address and telephone number of all persons paid and include by each name the amount paid to each person;

    (b)      all reasons why any Vessel Owners were paid for time worked when the vessel was idle.

    **ANSWER:**

5.      State the total number of vessels working in the VOO program on July 20, 2010, and the total number of vessels working in the VOO program on July 30, 2010. If there was a reduction in the number of vessels in the VOO Program, then state all reasons for this reduction.

      **ANSWER:**

6.      State the name, address and telephone number of all Vessel Owners whose vessels were removed or effectively taken out of the VOO program following Tropical Storm Bonnie.

      **ANSWER:**

7.      Was there a decision by BP to significantly reduce the number of vessels in the VOO program following Tropical Storm Bonnie? If your answer is "YES", describe the underlying basis for this decision and PRODUCE all documents that relate to such decision.

      **ANSWER:**

8.      Has the Plaintiff been paid for all invoices that the Plaintiff has submitted to BP pursuant to the VOO program? If the answer is "NO", then state:

      (a)      What invoices and time periods have not been paid?

      (b)      Every reason why BP has not paid the Plaintiff.

      **ANSWER:**

9.      Did BP send a termination letter or letter respecting non-renewal to the Plaintiff in connection to the Charter Party? If the answer is "YES", then state:

      (a)      the date of said letter;

      (b)      the reason said letter was sent to the Plaintiff.

      **ANSWER:**

10.     If BP did not send a termination letter or letter respecting non-renewal of the Charter Party to the Plaintiff, then state all the reasons why a termination letter was not sent.

**ANSWER:**

11.    Did BP draft the Charter Party signed by the Plaintiff?

**ANSWER:**

12.    Did BP allow the Plaintiff to negotiate any of the terms of the Charter Party?

**ANSWER:**

15.    Were any of the Vessel Owners allowed to use their vessels for any other purpose other then VOO operations when the vessels of such vessel owner was idle during the charter period or term with said vessel? If your answer is YES, please state BP's policy in this regard and PRODUCE all documents which in any way relate to this policy.

**ANSWER:**

13.    State the name, address and telephone # of any person working for BP and/or any subcontractor of BP that had a conversation with the Plaintiff regarding the following issues:

    a.    The signing of Charter Party;

    b.    When Plaintiff was supposed to have his vessel ready to begin work;

    c.    Whether the Plaintiff was supposed to be on standby status for any reason;

    d.    Plaintiff's work status as of the last day that his vessel worked on the water, and at all periods thereafter.

**ANSWER:**

14.    Did BP utilize any subcontractors when communicating or managing the Plaintiff for his work in the VOO program? If so, then please:

    a.    State the name and address of the subcontractors used and the purpose of the subcontractor as it related to the Plaintiff in this case.

b. PRODUCE all contracts, emails, memorandums, and any other documented communications between BP and the subcontractors regarding their involvement in the VOO program.

**ANSWER:**

15.   REQUEST FOR PRIVILEGE LOG: For all documents withheld from identification and/or production based on any privilege or other objection to any of Plaintiff's discovery served in this lawsuit, describe said document with particularity (i.e. give a description of the document;  the bates label #; state when the document was generated; and state the subject matter of the document).

**ANSWER:**

## REQUESTS FOR PRODUCTION

COMES NOW, the plaintiff in the above-styled cause pursuant to the Alabama Rules of Civil Procedure 34 and propounds the following discovery requests.  In responding to this request for production of documents, you are required to furnish all documents available to you, including documents in the possession of your attorney, your insurance carrier or any person acting on your behalf, and not merely such documents that may be in your personal possession. If you cannot respond to any particular request in full exercising due diligence to secure the documents sought, so state and respond to the extent possible, specifying your inability to respond to the remainder.

You are under a duty to seasonably amend a prior response if you obtain information upon the basis of which you know that the response, though correct when made, is no longer true, and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

1.     Produce your entire file as it relates to this Plaintiff and the Charter Party, which includes, but is not limited to all documents from the inception of all negotiations concerning the Charter Party, until the present.

**ANSWER:**

2.     Produce all documents which list the names, address and telephone numbers of all persons and/or entities employed in the VOO program, including all dates worked and the total amount of money paid to each participant.

**ANSWER:**

3.     Produce all internal emails, correspondence, memorandum and other documents that relate to the formation and purpose of the VOO program.

**ANSWER:**

4.     Produce all documents that describe or discuss whether or not a Vessel Owner would be permitted to use his vessel for any other purpose other then VOO operations when their vessel was idle during the charter period or term with said vessel

**ANSWER:**

5.     Produce all internal emails, memorandum and other documents that relate to the termination or non-renewal of any charter party respecting the VOO program, including in your answer when termination or non-renewal would occur and the reasons therefore.

**ANSWER:**

6.     Produce all emails, memorandum and other documents that relate to the termination or non-renewal of any Charter Party in connection with the VOO program and/or participants in the program following Tropical Storm Bonnie.

**ANSWER:**

9 of 11

7.     Produce all emails, memorandum and other documents that relate to BP's intentions at any time concerning the duration of the VOO program and/or how long BP will continue the VOO program.

    **ANSWER:**

8.     Produce all documents mentioned or requested in the interrogatories filed concurrently herewith.

    **ANSWER:**

9.     Produce the "Master Vessel Charter Agreement" signed by the plaintiff in this case.

    **ANSWER:**

9.     Produce all log entries signed by Plaintiff and any of his crew while working in the VOO program.

    **ANSWER:**

10.     Produce all documents that in any way relate to the Plaintiff in this case that were gathered by any of your subcontractors.

    **ANSWER:**

 

        Respectfully Submitted,

        /s/ Edward P. Rowan
        RICHARD H. TAYLOR (TAY024)
        STEVEN A. MARTINO (MAR057)
        W. LLOYD COPELAND (COP006)
        EDWARD P. ROWAN (ROW014)
        Taylor • Martino, PC
        51 St. Joseph Street
        Mobile, AL 36602
        PH: 251-433-3131
        FX: 251-405-5080
        richard@taylormartino.com
        stevemartino@taylormartino.com
        lloyd@taylormartino.com
        ed@taylormartino.com

/s/ J.W. Goodloe, Jr.
J. W. GOODLOE, JR. (GOO012)
Vickers, Riis, Murray and Curran, L.L.C.
56 St. Joseph Street
11th Floor, Regions Bank Building
Post Office Drawer 2568
Mobile, AL 36652-2568
PH: 251-432-9772
FX: 251-432-9781
bgoodloe@vickersriis.com

## *THIS DISCOVERY IS BEING SERVED WITH THE COMPLAINT—RESPONSES ARE DUE 45 DAYS FROM THE SERVICE OF THE COMPLAINT*